# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11078
Conference Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 18, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

DANTANA TANKSLEY,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

ON PETITION FOR PANEL REHEARING

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

REAVLEY, Circuit Judge:

In light of *Mathis v. United States*, 136 S.Ct. 2243 (2016), and *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), we granted defendant Dantana Tanksley's motion for panel rehearing to decide whether *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007), still represents the law. *Ford* held that a conviction for possession with intent to deliver a controlled substance under section 481.112(a) of the Texas Health and Safety Code ("Section 481.112(a)") qualifies as a "controlled substance offense" under the United States Sentencing Commission Guidelines Manual (the "Guidelines"). On rehearing,

No. 15-11078

our prior panel opinion is WITHDRAWN, and this opinion is SUBSTITUTED therefor.

## I.

In 2015, Tanksley pleaded guilty to violating 18 U.S.C. § 922(g), which prohibits convicted felons from possessing firearms. At sentencing, the district court found that a prior conviction under Section 481.112(a) for possession with intent to deliver a controlled substance constituted a "controlled substance offense" within the meaning of the Guidelines, § 4B1.1. Tanksley objected to this particular enhancement but conceded his objection was foreclosed by *Ford*. Tanksley then appealed, again conceding that *Ford* foreclosed this argument. Indeed, both of the arguments Tanksley made on appeal—he also disputed the constitutionality of 18 U.S.C. § 922(g)—were admittedly foreclosed, and we granted the government's unopposed motion for summary affirmance. *See United States v. Tanksley*, Case No. 15-11078, 2016 WL 4375058 (5th Cir. Aug. 16, 2016). Shortly before we affirmed Tanksley's conviction and sentence, the Supreme Court issued *Mathis*. Based on that decision and this Court's decision in *Hinkle*, Tanksley moved for panel rehearing. We granted the motion.

*Mathis* is relevant to the district court's determination that the Section 481.112(a) conviction represented a controlled substance offense under the Guidelines. "In determining if a prior conviction is for an offense enumerated or defined in a Guidelines provision, we generally apply the categorical approach and look to the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which the defendant was convicted." *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016). Some criminal statutes, however, are "divisible," meaning a single statute "define[s] multiple crimes." *Mathis*, 136 S.Ct. at 2249. The Supreme Court has "approved the 'modified categorical approach' for use with statutes having multiple alternative elements," permitting courts

No. 15-11078

to examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* With the precise crime thus identified, the court can then apply the categorical approach, asking whether that precise crime matches the Guidelines offense at issue. *Id.*

Some criminal statutes appear divisible but are not. These statutes, rather than providing alternative elements, instead list "various factual means of committing a single element." *Id.* In *Mathis*, the Supreme Court held that the modified categorical approach is not appropriate for this species of criminal statute. *Id.* at 2257. More importantly here, it also "provided helpful guidance for determining whether a predicate statute of conviction is divisible." *United States v. Uribe*, 838 F.3d 667, 670 (5th Cir. 2016). This factual and legal backgrounded concluded, we turn to our analysis.

## II.

We have been asked to find an otherwise controlling precedent obsolete. While the defendant argues that, together, *Mathis* and *Hinkle* put *Ford* into doubt, it is appropriate to focus our inquiry on *Mathis*. This is because, under the rule of orderliness, "one panel of this Court may not overrule another." *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (quoting *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001)). As a corollary, "to the extent that a more recent case contradicts an older case, the newer language has no effect." *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000). If, however, a Supreme Court decision "expressly or implicitly" overrules one of our precedents, we have the authority and obligation to declare and implement this change in the law. *See United States v. Kirk*, 528 F.2d 1057, 1063 (5th Cir. 1976). "Such an intervening change in the law must be unequivocal, not a mere 'hint' of how the Court might rule in the future." *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013). Accordingly, only

3

No. 15-11078

*Mathis* can inter *Ford*, and we ignore *Hinkle* while asking whether the Supreme Court unequivocally abrogated *Ford*.[1]

Under Section 481.112(a), "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance" as defined elsewhere in the Code. *Ford*'s feature holding was that a conviction for "'possession with an intent to deliver' a controlled substance under section 481.112(a) . . . can be used as a basis for a sentence enhancement as a 'controlled substance offense' under" the Guidelines. 509 F.3d at 715. That holding, if still applicable, controls this case because the defendant here was also convicted of possession with intent to deliver a controlled substance.

More important for our purposes, however, is *Ford*'s necessary predicate holding—that Section 481.112(a) is a divisible statute such that (1) use of the modified categorical approach is appropriate and (2) "possession with intent to deliver" a controlled substance is a distinct crime from mere delivery of that same controlled substance. This holding was crucial because, in *United States v. Gonzales*, 484 F.3d 712 (5th Cir. 2007) (per curiam), we had already held that a conviction for *delivery* of a controlled substance under that same Section 481.112(a) was *not* a "drug trafficking offense" under the Guidelines. There being no substantive difference between a "controlled substance offense" and a "drug trafficking offense" under the Guidelines, the holding in *Gonzales* would necessarily control the outcome in *Ford* if Section 481.112(a)'s reference to

---

[1] Our approach would be different if *Hinkle* had considered whether *Mathis* unequivocally overruled *Ford*. Such a ruling would have resolved this case as well. *Hinkle* did not take this approach, instead simply recognizing that its conclusion is potentially "contrary to prior precedent of this court" and identifying one affected case, *United States v. Garcia–Arellano*, 522 F.3d 477 (5th Cir. 2008). *See* 832 F.3d at 574–57 & n.27. Accordingly, *Mathis*'s impact on our precedents was not settled by that case.

manufacture, delivery, and possession with intent to deliver merely set forth three ways to commit one crime rather than three separate crimes.

To reconcile *Gonzales*, *Ford* explained that the "significant distinction" was that defendant Jason Jermaine Ford been convicted "for possession with the intent to deliver rather than just delivery or transportation." *Ford*, 509 F.3d at 717. In other words, possession with intent to deliver and actual (or mere) delivery are two separate crimes—one that qualifies as a controlled substance offense, one that does not. We have subsequently recognized and maintained this line drawn in *Ford*. *See Vasquez-Martinez v. Holder*, 564 F.3d 712, 718–19 (5th Cir. 2009). And, prior to *Mathis*, Section 481.112(a)'s status as a divisible statute subject to a modified categorical approach was firmly established. *See, e.g.*, *United States v. Garcia-Arellano*, 522 F.3d 477, 480 (5th Cir. 2008).

The government contends that *Ford* does not utilize the modified categorical approach, but the court in *Ford* looked at the defendant's indictment to determine that he had been convicted of possession with intent to deliver a controlled substance rather than "just" delivery of a controlled substance. 509 F.3d at 717. This is the modified categorical approach. In *Mathis,* the Supreme Court clarified *when* this approach is proper: where a single statute lists elements in the alternative, and thereby defines multiple crimes. 136 S.Ct. at 2249. Because *Ford* concludes that Section 481.112(a) contained distinct criminal offenses, it complies with this aspect of *Mathis*. Accordingly, if the Supreme Court had merely resolved the circuit split on when the modified categorical approach is proper, we would be unable to say that it unequivocally abrogated *Ford*.

The Supreme Court went further though, and also instructed courts on how to identify truly divisible statutes. *Mathis* explains that, in "easy" cases, a state court decision directly provides an answer. *Id.* at 2256. Thus, "[i]n

light of *Mathis*, we know that we must determine whether 'listed items' in a state statute 'are elements or means,' and if 'a state court decision definitively answers the question' our inquiry is at an end." *Howell*, 838 F.3d at 498.

*Mathis*, which dealt with an Iowa burglary statute, was an easy case:

> The listed premises in Iowa's burglary law, the State Supreme Court held, are "alternative method[s]" of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle. [*State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981).]   When a ruling of that kind exists, a sentencing judge need only follow what it says.

*Mathis*, 136 S.Ct. at 2256.

Here, too, a state court decision settles the question.  In *Lopez v. State*, Texas' highest criminal court was "asked to decide whether a person's offer to sell three kilos of cocaine in the morning and his possession of cocaine with the intent to deliver it to complete that same sale in the evening constitutes one offense or two."  108 S.W.3d 293, 294 (Tex. Crim. App. 2003).  Thus, the case was specifically about whether *delivery* (an offer to sell a controlled substance amounts to delivery under Texas law, *see* Tex. Health & Safety Code § 481.002(8)) and *possession with intent to deliver* were separate offenses.  The court held that "Section 481.112 provides *several different means* for committing the offense of delivery of a single quantity of drugs so that, no matter where along the line of actual delivery—from the offer to sell, to the possession of the drugs with the intent to deliver them, to the actual delivery itself—the drug dealer may be held accountable for the gravamen of the offense—the distribution of dangerous drugs in our society."  *Id.* at 299–300 (emphasis added).  The means or elements question has been directly answered by the Texas court.

*Mathis* is "more than merely illuminating with respect to the case before us;" it unequivocally resolves the question in favor of Tanksley.  *See In re Texas Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 331 (5th Cir. 2013) (quoting

*Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 648 (5th Cir. 2012)). *Ford* cannot stand. Section 481.112(a) is an indivisible statute to which the modified categorical approach does not apply.

We note that *Hinkle* reached essentially the same result for the same reasons. *See* 832 F.3d at 574–76. The government does not dispute *Hinkle*, instead describing it as "merely a straightforward application of *Mathis*." (Gov. Supp. Br. at 11.) We agree with this characterization. However, the government's only plausible line of argument was that, under the rule of orderliness, *Hinkle* must be disregarded to the extent it is incompatible with *Ford*. This is because, contrary to the government's position, Section 481.112(a) cannot be divisible if violated by mere delivery and indivisible if violated by possession with intent to deliver. Under such a reading, courts would be required to undertake a modified categorical approach analysis simply to determine if the modified categorical approach is proper. The legal physics at play simply will not be permit a single statute to be both divisible and indivisible. *Hinkle*'s holding that Section 481.112 is divisible was vulnerable to challenge only under the rule of orderliness, and we now reject that challenge.

Because the modified categorical approach is inappropriate in this case, we cannot use it to "narrow" Tanksley's conviction to "possession with intent to deliver" a controlled substance. *See Howell*, 838 F.3d at 499. We instead look to Section 481.112(a) as a whole in determining whether his conviction thereunder qualifies as a controlled substance offense under the Guidelines. Section 481.112(a) "criminalizes a 'greater swath of conduct than the elements of the relevant [Guidelines] offense.'" *Hinkle*, 832 F.3d at 576 (quoting *Mathis*, 136 S.Ct. at 2251). Tanksley's conviction under that statute does not qualify as a controlled substance offense under the Guidelines. *Id.*

No. 15-11078

III.

The government contends that any error was harmless. "[T]he harmless error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010).

Here, the district court stated that "[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553." Similar statements have been sufficient to establish harmless error in other cases. *See United States v. Richardson*, 713 F.3d 232, 237 (5th Cir. 2013); *United States v. Garcia*, 647 F. App'x 408, 410 (5th Cir. 2016). Nonetheless, it is not enough for the district court to say the same sentence would have been imposed but for the error. *See United States v. Bazemore*, 608 F. App'x 207, 216 (5th Cir. 2015). "The government must point to evidence in the record that convincingly demonstrates the district court would impose the *same* sentence for the *same* reasons." *United States v. Hernandez–Montes*, 831 F.3d 284, 296 (5th Cir. 2016)

In this case, our review of the record does not convince us that the within-Guidelines sentence imposed by the district court had nothing to do with the Guidelines calculation. *See id.* at 295 (To establish harmless error, "the government 'must show that the [sentence] the district court imposed was not influenced in any way by the erroneous Guideline calculation.'" (quoting *United States v. Ramos*, 739 F.3d 250, 253 (5th Cir. 2014)). At the sentencing hearing, the district court overruled Tanksley's objection to the Guidelines, § 4B1.1 enhancement, expressly adopted the probation officer's Guidelines calculation, and pointed out that the sentence was at "the bottom of the guidelines." The district court's Statement of Reasons indicates Tanksley was

No. 15-11078

not sentenced "outside the advisory guideline system" and that "the Court considered the advisory guidelines." We cannot say "with the requisite certainty" that the error was harmless. *See Ibarra-Luna*, 628 F.3d at 719.

IV.

Tanksley's unopposed motion for leave to file a reply brief is GRANTED. Tanksley's sentence is VACATED, and we REMAND for resentencing.